

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00326-CV

———————————————

HYDROWORKS INC., Appellant

V.

THE ESTATE OF DEBORAH MCCARTNEY WILLIAMS, Appellee

———————————————

On Appeal from Probate Court No. 2
Denton County, Texas
Trial Court No. PR-2020-01222-01

———————————————

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

After obtaining judgments against two business entities, Appellant Hydroworks, Inc. (Hydroworks) attempted to collect on those judgments from Appellee, the Estate of Deborah McCartney Williams (the Estate). The trial court granted summary judgment for the Estate, and Hydroworks appeals. We will affirm.

## I. BACKGROUND

Deborah Williams was an architect who conducted her business through two entities: Deborah L. Williams, Inc. (the Corporation) and Deborah L. Williams Architecture, LP (the Partnership). Williams was the sole shareholder of the Corporation and the only limited partner of the Partnership, and the Corporation is the general partner of the Partnership. Each entity maintained its own bank accounts and filed its own taxes. Williams likewise had her own personal bank accounts, filed personal taxes, and received Schedule K-1 tax forms showing her income from the Corporation and Partnership.

Hydroworks is a construction company that was hired in 2016 to build an entertainment facility in Laredo, Texas. The Partnership and the Corporation were contracted to produce the architectural plans for the facility. Complications arose on the project, and Hydroworks sued the Corporation, the Partnership, and other

defendants for various causes of action including breach of contract and fraud.[1] Williams was not sued in her individual capacity.

In August 2020, Hydroworks obtained a judgment against the Corporation for approximately $1.28 million. Williams then died intestate in October 2020. In April 2021, Hydroworks obtained a judgment against the Partnership for approximately $1.33 million.[2] Both judgments remain unpaid.

In November 2020, Williams's sisters were named co-administrators (the Administrators) of her Estate. They published the required notices to unknown heirs and creditors and filed an inventory and appraisal of the Estate's assets. The trial court approved the inventory, and on October 7, 2021, the Administrators filed an application to close the Estate.

On October 26, 2021, Hydroworks filed a claim in the probate case alleging that it held approximately $2.6 million in judgments against the Estate.[3] The

---

[1]The record contains very little information concerning the underlying lawsuit. We have drawn all facts related to this lawsuit from the factual allegations contained in Hydroworks's counterclaim, which was attached to the Estate's motion for summary judgment.

[2]The abstract of the judgment against the Partnership lists the judgment defendant as "Deborah L. Williams Architecture, LLP" rather than LP. However, both parties acknowledge that the judgment was against the Partnership, and no issue was raised with the trial court or on appeal concerning this apparent misnomer.

[3]Hydroworks initially alleged that its claim against the Estate was unsecured but filed an amendment alleging that the claim was secured.

Administrators rejected this claim, arguing that the judgments were against the business entities rather than Williams individually or the Estate.

On December 29, 2021, Hydroworks filed within the probate case its "Original Petition Against Independent Executors"[4] in which it alleged that the Estate "became the owner of the entities and liable for the judgment debts owed by those entities." It asserted two causes of action: (1) "payment of claim" pursuant to Section 403.0585 of the Texas Estates Code and (2) piercing the corporate veil, arguing that Williams had used the Corporation and Partnership as a sham to perpetrate a fraud, an alter ego, and as a means to evade her legal obligations.[5]

On November 16, 2022, the Estate filed a motion entitled "Defendants' Traditional and No Evidence Motion For Summary Judgment." It argued that Hydroworks's payment-of-claim cause of action failed because there was no evidence of a judgment against Williams individually or the Estate. Regarding the piercing-the-corporate-veil cause of action, the Estate argued that there was no evidence showing

---

[4]In its filings with the trial court and in its appellate briefing, Hydroworks refers to the Administrators interchangeably as executors and administrators.

[5]An attempt to pierce the corporate veil is not typically an independent cause of action but, rather, a means of imposing liability on an underlying cause of action. *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119 (Tex. App.—Austin 1987, writ denied). A party may, however, "assert an alter ego theory against a third party in a second suit to collect a judgment." *In re GTG Sols., Inc.*, 642 S.W.3d 41, 47 (Tex. App.—El Paso 2021, orig. proceeding).

that Williams had engaged in actual fraud against Hydroworks, which would preclude imposing the Corporation's and Partnership's liabilities on her and the Estate.

The Estate's motion was set for oral hearing on March 6, 2023, and Hydroworks filed a motion for continuance of that setting. The only reason given by Hydroworks to explain its need for a continuance was that its attorney was scheduled to appear in a federal immigration court on that same day. The trial court granted the motion for continuance.

Hydroworks then responded to the Estate's summary judgment motion. It objected to summary judgment on the ground that adequate time for discovery had not passed, alleging that the Administrators had "actively resist[ed] discovery." Further, citing *In re Estate of Trevino*, 195 S.W.3d 223, 230 (Tex. App.—San Antonio 2006, no pet.), Hydroworks argued that the Administrators became the "sole shareholders" of the Corporation and Partnership upon Williams's death and were, thus, liable for the debts of both entities. Alternatively, Hydroworks argued that the evidence sufficiently raised genuine fact issues related to its claims of piercing the corporate veil. In support, Hydroworks attached the affidavit of its president, Rene Garza, and hundreds of pages of bank statements and tax documents.

What follows is the entirety of Garza's material attestations:

[] I undertook an analysis of the bank statements of [Williams] as well as her tax returns and the returns [filed] by the corporate entities to which she was the sole shareholder at the time of her death. These documents were produced to me by the [Estate] at the request of Hydroworks attorneys.

5

[] The bank statements are attached to this affidavit as Exhibit C. The tax returns are attached as Exhibit D.

[] I created Exhibit B, which is an analysis by category of the spending reflected in the bank accounts. Exhibit B covers all spending from the accounts produced.

[] I also [created] Exhibit A, which is a summary of the analysis reflected in Exhibit B.

[] Exhibit A shows that [Williams] actually transferred $416,156.88 from the corporate entities to herself over the time period produced. Exhibit A also shows that [Williams] only repaired [sic] $146,462.00 of the $416,156.88 as income on the tax returns that cover the same time period. Finally, Exhibit A shows that the Decedent owed the corporate entities $266,693.88, at the time of her death.

The bank statements show transaction history for the years 2016–2020 for Williams's personal account and accounts for the Corporation and Partnership. The tax documents show federal tax return information for the years 2016–2019 for Williams, the Corporation, and the Partnership.

Exhibit A attached to Garza's affidavit contains the following table:

| Debra Williams | |
|---|---|
| Checks to Deborah Williams | $123,445.48 |
| Online transfers to personal acct 7067 | $136,281.36 |
| telephone transfers to personal acct 7067 | $89,060.00 |
| Personal withdrawals at bank | $58,996.39 |

6

| | |
|---|---|
| Payments to personal Amex | $38,615.65 |
| Total | $446,398.88 |
| | |
| Payments from 7067 to 0187385 business acct online | -$28,747.00 |
| phone transfers from 7067 to 0187385 business act | -$4,495.00 |
| | |
| Total borrowed | $413,156.88 |
| | |
| Personal Returns | |
| 2016 Tax Return | $79,200.00 |
| 2017 Tax Return | $32,756.00 |
| 2018 Tax Return | $31,270.00 |
| 2019 Tax Return | $3,237.00 |
| Tax Return Totals | $146,463.00 |
| Total owed back to Company | $266,693.88 |

Exhibit B attached to Garza's affidavit is a lengthy spreadsheet containing line-item entries for each of the thousands of credits and debits shown in the bank statements. Each entry shows the date the transaction occurred, the person/entity paying or receiving the money, the type of transaction, and the amount.

The trial court granted the Estate's motion for summary judgment without specifying the grounds on which it relied. Hydroworks appeals from that judgment.

## II.  STANDARD OF REVIEW

We review de novo a trial court's ruling on a summary judgment motion.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  When, as here, a party moves for both traditional and no-evidence summary judgment, and our determination of the no-evidence summary judgment could make the grounds asserted in the traditional motion moot, we first review the trial court's ruling under the no-evidence standard of review.  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  If the trial court properly granted the no-evidence motion, we need not consider the arguments raised in the traditional motion for summary judgment. *Id.*

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the elements for which no evidence exists.  *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).  A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine fact issue supporting each element contested in the motion. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not

proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

## III. DISCUSSION

Hydroworks argues that the trial court erred in granting summary judgment because (1) insufficient time had passed to conduct discovery, (2) more than a scintilla of evidence existed to support its claims, and (3) the Estate made no argument to support its traditional summary judgment motion.

### A. TIME FOR DISCOVERY

In its first point, Hydroworks complains that the trial court abused its discretion in granting summary judgment because there had not been adequate time to

9

conduct discovery as required by Rule 166a(i).  *See* Tex. R. Civ. P. 166a(i) (permitting no-evidence motions only after adequate time for discovery has passed).

When a party contends under Rule 166a(i) that it was not afforded adequate time to conduct necessary summary judgment discovery, it must file either an affidavit or a verified motion for continuance explaining the need for further discovery. *Barrientos v. Barrientos*, 675 S.W.3d 399, 412 (Tex. App.—Eastland 2023, pet. denied); *Meyerhoff v. Pac. Union Fin., LLC*, No. 02-18-00393-CV, 2019 WL 5089760, at *4 (Tex. App.—Fort Worth Oct. 10, 2019, no pet.) (mem. op.).  When an appellant does not file such an affidavit or verified motion, it fails to preserve the complaint for appellate review.  *Meyerhoff*, 2019 WL 5089760, at *4.

Here, Hydroworks filed a verified continuance motion but sought to continue the date of the summary judgment hearing only on the grounds that its attorney had a conflict on the original setting date.  Hydroworks never filed an affidavit or verified motion for continuance stating that it needed additional time for discovery and explaining why such was necessary.  *See id.*  And its attempt to lodge this objection within its unverified summary judgment response did not adequately preserve the issue.  *See Robeson v. Mortg. Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *4 n.3 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.) ("Although Robeson requested additional time for discovery in her response to appellees' motion for summary judgment, the response was not verified and, thus,

cannot serve as a verified motion for continuance. *See, e.g.*, Tex.[ ]R. Civ. P. 251, 252.").

Accordingly, we hold that Hydroworks waived its first point, and we overrule it.

## B. NO-EVIDENCE POINT

In its second point, Hydroworks argues that summary judgment was improper because there was more than a scintilla of evidence to support each element of its two causes of action against the Estate. We disagree.

## 1. Payment-of-Claim Cause of Action

In its original petition, Hydroworks claimed that the Administrators "should pay [Hydroworks]'s claims out of the [E]state proceeds" pursuant to Section 403.0585 of the Texas Estates Code. Section 403.0585 provides that

> [a]n independent executor, in the administration of an estate, may pay at any time and without personal liability a claim for money against the estate to the extent approved and classified by the independent executor if:
>
> > (1) the claim is not barred by limitations; and
> >
> > (2) at the time of payment, the independent executor reasonably believes the estate will have sufficient assets to pay all claims against the estate.

Tex. Est. Code Ann. § 403.0585.

In its motion for summary judgment, the Estate argued that there was no evidence showing that Hydroworks held a claim against Williams personally or the

11

Estate to enable Hydroworks's recovery under Section 403.0585. Rather, says the Estate, the evidence showed only that Hydroworks held judgments against the Corporation and Partnership, for which the Estate was not liable.

In its response, Hydroworks argued that there was evidence of a valid claim against the Estate because "when a decedent is the sole shareholder of a corporate entity, then the executor of the estate becomes the sole shareholder of the company." Thus, according to Hydroworks, the Administrators became the "sole shareholders" of the Corporation and Partnership[6] automatically upon Williams's death and, thus, they became liable for the judgments against the businesses.

Hydroworks relies solely on *Trevino* to support this contention. *See* 195 S.W.3d at 230. In that case, Jesse Treviño (the decedent) was the sole shareholder of a San Antonio bar. *Id.* at 226. Mary Cadena was the sole beneficiary and executrix under his will. *Id.* Randy Bond had been operating the bar under what he claimed to be a handwritten bill of sale whereby he gained ownership of the bar from Treviño before his death. *Id.* Disputes arose between Cadena and Bond over the ownership of the bar and then between Cadena and her attorney related to their contingency fee agreement under which her attorney claimed partial ownership of the bar for services

---

[6]In its filings with the trial court and on appeal, Hydroworks draws no distinction between the Corporation and Partnership as separate types of business entities (a corporation and a limited partnership) that are in many ways treated differently under the law. *Compare, e.g.*, Tex. Bus. Orgs. Code Ann. §§ 20.001–23.110 (governing corporations), *with id.* §§ 153.001–.555 (governing limited partnerships).

12

he had rendered in representing her in the probate case. *Id.* at 227. Ultimately, the trial court awarded 40% ownership of the bar to the attorney and appointed a receiver to oversee the transfer of assets. *Id.* at 228.

On appeal, Cadena challenged (among other things) the appointment of the receiver, arguing that, because the assets were owned by the bar—a corporation that had not been a party to the underlying proceedings—her attorney had no claim to those assets and the receiver had no power to convey them. *Id.* at 230. The court of appeals disagreed, explaining:

> Treviño was the sole shareholder of [the bar] at the time of his death. Upon his death, Cadena, as independent executrix of Treviño's estate, became the sole shareholder. The shareholders of a corporation are the equitable owners of its assets and may bind the corporation by a contract that all of the shareholders sign. Notwithstanding a charter, by-law[,] or statutory provision that places the power of management in a board of directors or requires formal action by them, a sole shareholder may himself deal with the corporation's property and make contracts regarding the corporate assets that are binding on the corporation so long as the rights of creditors are not prejudiced.

*Id.* (internal citations omitted). The court explained that Cadena, as sole shareholder, had thus bound the bar to the fee agreement, the effect being that the attorney now owned a 40% ownership share of the bar's assets, and the bar owned a 60% share of those assets; Cadena still held 100% of the bar's shares. *Id.* at 230–31. The court of appeals also held that the trial court did not err by appointing a receiver to oversee the transfer of these varying interests. *Id.*

*Trevino* does not help Hydroworks. Even assuming that the Administrators became the sole shareholders of the Corporation and Partnership on Williams's death (and ignoring the fact that limited partnerships issue no shares to hold), it does not follow that the Administrators or the Estate became liable for Hydroworks's judgments against those businesses. The *Trevino* court nowhere suggests that an executrix–shareholder loses corporate liability protections simply because she obtained her shares via a decedent shareholder. Neither does the court suggest that an estate becomes automatically liable for the debts of a business entity simply because the decedent was the sole owner of those entities. In fact, it presupposes exactly the opposite by acknowledging that the corporate entity continued to exist and own the bar's assets even after Treviño's death. *See id.* Put simply, *Trevino* does not, as Hydroworks insinuates, propose that a sole-shareholder's death serves to eliminate the unmistakable shield against liability that a shareholder enjoys under Texas law. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principal of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations. Avoidance of personal liability is not only sanctioned by the law; it is an essential reason that entrepreneurs . . . choose to incorporate their businesses."). Hydroworks points us to no such precedent, and we see none.

14

Accordingly, we hold that there was no evidence that Hydroworks held a claim against the Estate upon which to base a valid cause of action under Section 403.0585 of the Estates Code. *See* Tex. Est. Code Ann. § 403.0585.

## 2. Piercing the Corporate Veil Cause of Action

Hydroworks pleaded alternatively that the Administrators and the Estate were liable for the judgments under a piercing-the-corporate-veil theory because Williams had used the businesses as a sham, an alter ego, and a means to evade her legal obligations. The Estate moved for summary judgment on this cause of action, arguing that there was no evidence that Williams had perpetrated an actual fraud against Hydroworks as required by Texas law. Hydroworks responded by supplying Garza's affidavit and voluminous bank and tax records and claiming that they showed that Williams was one and the same as the Corporation and Partnership. Hydroworks argued that this evidence also showed that Williams had perpetrated a fraud against it "by converting, off book and in secret, funds available to the corporation to pay the judgments [Hydroworks] had properly obtained."

The corporate veil can be pierced when individuals who are normally insulated from liability for corporate obligations (such as shareholders) "abuse the corporate privilege." *Keyes v. Weller*, No. 22-1085, 2024 WL 3210234, at *3 (Tex. June 28, 2024) (internal quotations omitted). This is "an exception to the general rule which forbids disregarding corporate existence" and to the presumption that a corporation is separate from its officers and shareholders. *Sheridan v. Williams*, No. 13-21-00342-CV,

15

2023 WL 2607740, at *7 (Tex. App.—Corpus Christi–Edinburg Mar. 23, 2023, no pet.) (mem. op.) (quoting *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984)). Thus, the corporate veil can be pierced only in "exceptional circumstances" and its applicability is limited by various laws and statutes, including Section 21.223 of the Texas Business Organizations Code. *Id.*; *see Keyes*, 2024 WL 3210234, at *3–4.

Section 21.223 provides that a shareholder is not liable for the debts of the corporation related to

> any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the [shareholder] is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory . . . .

Tex. Bus. Orgs. Code Ann. § 21.223(a)(2). The only exception to this non-liability rule is that a shareholder may be held liable for such corporate obligations "if the obligee demonstrates that the [shareholder] caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [shareholder]." *Id.* § 21.223(b); *see Lone Star Air Sys., Ltd. v. Powers*, 401 S.W.3d 855, 862 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Thus, it is not enough for an obligee seeking to impose a corporation's contractual liability onto a shareholder to simply pierce the veil by proving alter ego, sham, or the like. *Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *15 (Tex. App.—Austin Jan. 10, 2007, no pet.) (mem. op.). The obligee must also prove that the shareholder used the corporation to perpetrate an actual

16

fraud for his personal benefit against the obligee. *Id.* Importantly, "[t]he actual fraud component in [S]ection 21.223 concerns shareholder liability for *acts of the corporation in connection with contract claims.*" *Id.* (internal quotations omitted).[7]

Section 21.223 applies here because Hydroworks seeks to hold Williams (and, thus, the Estate) liable for the Corporation's and the Partnership's obligations which related to or arose from the entities' contractual obligations to create architectural plans to build the entertainment facility in Laredo. *See* Tex. Bus. Orgs. Code Ann. § 21.223. Thus, to survive the Estate's no-evidence motion on its piercing-the-veil cause of action, Hydroworks bore the burden of producing more than a scintilla of evidence that Williams used the Corporation and the Partnership to perpetrate an actual fraud against Hydroworks in connection with the underlying contract claims for which it obtained the judgments. *See id.* Hydroworks failed to do this.

---

[7]Again, Hydroworks draws no distinction between corporations and limited partnerships, arguing broadly that the veils of both the Corporation and Partnership should be pierced. Thus, we do not reach any questions that might relate to how the two types of entities are treated differently under the law on this issue. We note, though, that Texas courts have uniformly held that the various theories of piercing the corporate veil are inapplicable to partnerships. *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (collecting cases). But even if piercing the veil did apply to partnerships, "the application of the doctrine would be limited to circumstances in which the limited partnership was used to perpetrate actual fraud for the direct, personal benefit of the defendant." *Id.* at 58–59; *cf. Shook v. Walden*, 368 S.W.3d 604, 621 (Tex. App.—Austin 2012, pet. denied) (stating that "claimants seeking to pierce the veil of an LLC must meet the same requirements as they would if the entity were a corporation").

The only evidence that Hydroworks produced on this issue was Garza's affidavit with the attached bank statements, tax returns, and analytical spreadsheets covering the years 2016–2020. Garza attested that this evidence showed that Williams had transferred more than $400,000 from the corporate entities to herself and that she owed the entities more than $260,000 at the time of her death. Hydroworks argues that this constituted more than a scintilla of evidence that Williams had perpetrated a fraud against it by improperly transferring, secreting, or squandering funds that should have been used to pay the judgments it held against the entities.

But this evidence says nothing about whether Williams used the entities to commit fraud against Hydroworks *in connection with the underlying contractual claims*. Apart from Hydroworks's pleading from the underlying case—which is not competent summary judgment evidence, *Hurdsman v. Mayo*, No. 02-17-00099-CV, 2018 WL 3060116, at *4 (Tex. App.—Fort Worth June 21, 2018, no pet.)—there is nothing in the summary judgment record that conveys any facts about the dealings between Williams, her entities, and Hydroworks within the dispute over the Laredo facility. Put simply, there is no evidence to suggest that Williams used the Corporation and the Partnership to commit a fraud against Hydroworks related to those entities' contractual obligations. Hydroworks does not even argue that such fraud occurred.

For these reasons, we hold that the trial court did not err in granting the Estate's no-evidence summary judgment motion and overrule Hydroworks's second point.

18

## C. TRADITIONAL SUMMARY JUDGMENT

In its third and final point, Hydroworks argues that the trial court improperly granted the Estate's traditional summary judgment motion because the motion was in substance only a no-evidence motion. However, having held that the trial court did not err in granting the Estate's no-evidence motion, we hold that this point is moot and we need not consider it. *See Ford Motor Co.*, 135 S.W.3d at 600.

## IV. CONCLUSION

Because we have overruled Hydroworks's first two points and because its third point is moot, we affirm the judgment of the trial court.

/s/ Brian Walker

Brian Walker
Justice

Delivered: August 1, 2024